**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| PHADIA AB and PHADIA US INC., | ) | |
| | ) | |
|      Plaintiffs, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | (Jury Trial Demand) |
| ALLERGY CENTERS OF | ) | |
| AMERICA, LLC, d/b/a | ) | Civil Action No. 1:10-cv-395 |
| ACA LABORATORIES, and | ) | |
| DIMITRI Z. PITOVSKI, | ) | |
| | ) | |
|      Defendants. | ) | |
| | ) | |

Plaintiffs Phadia AB and Phadia US Inc. (collectively "Phadia" or "Plaintiffs"),

for their Complaint against Defendant Allergy Centers of America, LLC, d/b/a ACA

Laboratories ("ACA"), and Dimitri Z. Pitovski (collectively "Defendants"), allege as

follows:

### NATURE OF THE ACTION

1.  This is an action by Plaintiffs against Defendants for trademark infringement,

false designation of origin, false advertising and unfair competition in violation of the

Lanham Act, for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 and

for common law unfair competition under the laws of the State of North Carolina in

connection with Defendant ACA's adoption and use of Phadia AB's registered trademark

IMMUNOCAP® to market hundreds of blood tests that are performed by Defendant

ACA to identify allergies in patients.

2.  In violation of federal trademark and unfair competition laws and related state unfair competition laws, Defendant ACA has been using Phadia AB's IMMUNOCAP® mark to advertise and market blood tests to detect allergies.  Defendant ACA does not perform these blood tests using Phadia AB's proprietary IMMUNOCAP® technology. Defendant ACA's acts deceive physicians into referring blood tests for allergies to Defendant ACA.  Upon information and belief, Defendant ACA's acts complained of herein were authorized, approved, and/or directed by Defendant Pitovski.  As a result, physicians have referred blood tests for their patients to Defendant ACA believing that Defendant ACA would provide allergy tests using the IMMUNOCAP® method. Defendant ACA's acts have diverted referral of blood tests for allergies from Plaintiffs' hospital and clinical laboratory customers to Defendant ACA resulting in injury to Plaintiffs.

## PARTIES

3.  Plaintiff Phadia AB is a privately-held, registered limited company under the laws of Sweden having its headquarters and principal place of business in Uppsala, Sweden.  Phadia AB develops, manufactures and markets complete blood test systems to support the clinical diagnosis and monitoring of allergies, asthma and autoimmune diseases.

4.  Plaintiff Phadia US Inc. ("Phadia US") is a wholly owned subsidiary of Phadia AB having its principal place of business in Portage, Michigan.  Phadia US is the exclusive distributor of Phadia AB's blood test systems in the United States.

5.  Upon information and belief, Defendant Allergy Centers of America, LLC, d/b/a ACA Laboratories is a limited liability company organized under the laws of the State of North Carolina having its principal place of business at 190 Charlois Blvd., Winston-Salem, North Carolina.

6.  Upon information and belief, Defendant Pitovski resides in Forsyth County, North Carolina.  Upon information and belief, Dr. Pitovski is the sole member and manager of Defendant ACA and is ultimately responsible for Defendant ACA's marketing and advertising activities.

## JURISDICTION AND VENUE

7.  This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121 because this action arises in part under 15 U.S.C. § 1125.  This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000).  This Court has supplemental jurisdiction over Phadia's state law claims pursuant to 28 U.S.C. § 1338(b) because these claims are joined with a substantial and related claim under federal trademark law and pursuant to 28 U.S.C. § 1367 because the state law claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because all parties do business in North Carolina, Defendants are located in this judicial district and a substantial part of Defendants' wrongful conduct has taken place in this judicial district.

## FACTUAL ALLEGATIONS

9. Phadia AB is a leading developer and manufacturer of blood test reagents, diagnostic equipment, and instruments to detect and identify allergies in patients. In 1974, Phadia's predecessor, Pharmacia Diagnostics AB ("Pharmacia"), developed a test known as RAST to measure the amount of IgE antibodies in blood and correlate the antibodies to specific allergy inducing substances, thereby allowing physicians to identify specific allergens to which a patient was allergic. In 1991, Pharmacia launched a new IgE blood test system for allergies referred to as IMMUNOCAP®, which used an improved chemistry and instrumentation. Since that time, Phadia AB has continued to invest substantial sums to conduct research and development to improve the IMMUNOCAP® system.

10. Phadia AB advertises and markets its blood test system for allergies under the IMMUNOCAP® mark. Approximately three-fourths of all allergy blood testing worldwide is performed using Phadia AB's IMMUNOCAP® blood test system because of its accuracy and reliability. In the United States, Phadia AB markets, distributes and sells its IMMUNOCAP® blood test system through Phadia US.

11. Phadia AB owns all right, title, and interest in the following federal trademark registrations for the IMMUNOCAP® marks: 1) Reg. No. 2,555,198 for chemical

reagents and diagnostic preparations for in vitro use as an aid in clinical diagnosis in scientific laboratories, in the medical and diagnostic industry (Int. Class 001); and 2) Reg. No. 3,645,935 for automated laboratory systems, namely, diagnostic apparatus and instruments for allergy testing and for autoimmunity testing (Int. Class 010). The IMMUNOCAP® mark covered by Reg. No. 2,555,198 ("the '198 registration") was registered more than five years ago, has been in continuous use since as early as 1991, and is in full force and effect. Under 15 U.S.C. § 1065, the '198 registration is incontestable and constitutes *prima facie* evidence of the validity of the mark. Phadia AB has spent millions in equivalent US dollars researching, developing, marketing and advertising allergy testing instrumentation and reagents under the IMMUNOCAP® mark and therefore has acquired special and particular significance and has developed substantial valuable goodwill for the mark and the products that bear the mark. When healthcare providers, such as physicians, see the IMMUNOCAP® mark, they automatically associate the mark with Plaintiff Phadia AB's blood test system for allergies.

12. Phadia US is the exclusive distributor of the IMMUNOCAP® blood test system in the United States. Phadia US advertises and markets the IMMUNOCAP® blood test system to clinical laboratories, hospitals and physicians in the United States.

13. The majority of clinical laboratories and hospitals in the United States that perform allergy testing use the IMMUNOCAP® blood test system because of its accuracy and reliability.

5

14.  Published, peer-reviewed clinical studies have shown that results of allergy blood tests performed using the IMMUNOCAP® system should not be correlated with results of allergy blood tests performed by other methods because the results of different methods are unlikely to correlate and to be interchangeable.  The studies also warn that interpreting the results of a blood allergy test performed using a method other than the IMMUNOCAP® method, as if the test were performed by the IMMUNOCAP® system, may result in inappropriately treating the patient, thereby resulting in harm to the patient.

15.  Upon information and belief, because of its accuracy and/or ease of use, Defendant ACA approached Sweden Diagnostics (US) Inc., now known as Phadia US, to obtain the instrumentation and reagents to perform blood tests for allergies using the IMMUNOCAP® system.  Defendant ACA then entered into an Instrumentation Use Contract effective January 17, 2006, with Sweden Diagnostics (US) Inc., whereby Sweden Diagnostics agreed to provide the IMMUNOCAP® instrumentation and reagents to Defendant ACA in return for certain payments so that Defendant ACA could perform blood tests for allergies using the IMMUNOCAP® instrumentation and reagents, *i.e.*, the IMMUNOCAP® system (or method), thereby allowing Defendant ACA to advertise and sell the allergy tests as being performed using the IMMUNOCAP® system or method.

16.  Defendant ACA was last shipped an approximate thirty-day supply of IMMUNOCAP® reagents under the Agreement in December 2006.  Plaintiff Phadia US is the sole authorized distributor in the United States of IMMUNOCAP® instrumentation and reagents.  Without instrumentation and reagents from Plaintiff Phadia US, Defendant

ACA would not have been able to perform blood tests for allergies using the IMMUNOCAP® method.

17.  Plaintiff Phadia US obtained a judgment against Defendant ACA on October 23, 2007, in Case No. B 07-0461-CK, 9th Judicial Circuit, State of Michigan, involving a claim and delivery action, which included an award of money damages in the amount of $110,737.19, and an order to deliver the IMMUNOCAP® 250 and UNICAP® 100RM instruments to Plaintiff Phadia US.  Possession of the instruments was finally obtained by Plaintiff Phadia US on June 11, 2008.

18.  Upon information and belief, after consuming its supply of IMMUNOCAP® reagents, Defendant ACA, at Dr. Pitovski's direction and control, knowingly and intentionally chose to offer blood tests to detect allergies using a different method or technology, yet has continued to identify and/or market the blood tests as being performed using the IMMUNOCAP® method.  Defendant ACA and Dr. Pitovski knew that their actions would deceive physicians, who order the blood tests, and damage Plaintiffs by diverting blood tests for allergy being performed by Plaintiffs' clinical laboratory customers to Defendant resulting in losses in revenue and profits to Plaintiffs.

19.  Phadia US sells IMMUNOCAP® reagents and supplies, and the use of the IMMUNOCAP® instrumentation to clinical laboratories, hospitals and physician offices throughout the United States.  Phadia US receives revenue from its customers based on the number of tests the customers perform on an annual basis and on the sales of the IMMUNOCAP® reagents, supplies and instrumentation.  Therefore, Phadia US has lost

7

and continues to lose revenue and profits on each blood test for allergy that Defendant

ACA diverts from Plaintiffs' customers. Defendant ACA's acts of representing that it

performs allergy blood tests using the IMMUNOCAP® method, when Defendant ACA

actually performs allergy blood tests using another method, have been done with the

knowledge that such acts would violate the rights of and injure Phadia US and/or Phadia

AB.

20. In early 2010, Plaintiffs learned that Defendant ACA was contacting

physicians and/or physician groups within North Carolina and this judicial district

offering to perform blood tests for allergies using the IMMUNOCAP® method.

Plaintiffs subsequently determined that Defendant ACA's website also represented that

Defendant ACA provided blood tests for allergies using the IMMUNOCAP® method.

21. By letter dated March 25, 2010, Plaintiffs' counsel demanded that Defendant

ACA cease use of the IMMUNOCAP® mark or provide evidence of a legal right to use

the IMMUNOCAP® trademark. Defendant ACA did not respond to this demand.

Neither Plaintiffs nor Plaintiffs' counsel has received a response to the letter of March 25,

2010.

22. By letter dated April 19, 2010, Plaintiffs' litigation counsel demanded on

behalf of Plaintiffs that Defendant ACA cease use of the IMMUNOCAP® mark,

including the removal of the IMMUNOCAP® mark from Defendant ACA's website no

later than 5:00 p.m. on April 26, 2010, or provide any legal basis for continued use of the

IMMUNOCAP® mark. The April 19, 2010, letter specifically identified Defendant

ACA's improper use of the IMMUNOCAP® mark on Defendant ACA's website.

23. Defendants responded through their counsel by letter dated April 30, 2010,

stating in part:

> Dr. Pitovski and Allergy Centers of America recognize
> Phadia AB and Phadia US Inc.'s rights under U.S. trademark
> laws, specifically trademark registration numbers 2,555,198
> and 3,645,935. Dr. Pitovski and Allergy Centers of America
> do not now, nor have they ever, had the desire to misrepresent
> the Allergy Centers' use of ImmunoCAP technology or
> infringe on ImmunoCAP's trademark rights. As such, we
> request that you identify any and all uses of the ImmunoCAP
> trademark by Allergy Centers of America that you allege are
> in violation of trademark laws. Upon receipt of same, Dr.
> Pitovski and Allergy Centers of America will take prompt
> action to ensure that any use of the ImmunoCAP trademark is
> within its rights under trademark law.
>
> Please be advised that due to the complexity of the Allergy
> Centers of America website, and the fact that the website
> engineers for Allergy Centers of America are located in
> California, the immediacy of the corrections demanded by
> you April 19, 2010 correspondence may not be practicable.
> However, once provided with Phadia's specific allegations of
> improper use of the ImmunoCAP trademark, Allergy Centers
> of America will proceed in the utmost good faith to comply
> with existing trademark laws.

24. The letter of April 19 from Plaintiffs' litigation counsel stated that Defendant

ACA was infringing the IMMUNOCAP® mark by using the mark on Defendant ACA's

website as representing that Defendant ACA performed blood allergy tests using the

IMMUNOCAP® method, when Defendant ACA does not and cannot perform the

IMMUNOCAP® method. The letters of March 25 and April 19 were sufficient to

identify Defendants' infringing conduct and impose on Defendants the obligation to cease use immediately of Plaintiff Phadia AB's mark.

25.  As of May 20, 2010, Defendant ACA's website continues to use the IMMUNOCAP® mark to represent falsely that Defendant ACA performs certain blood allergy tests using the IMMUNOCAP® method.  Attached hereto as **Exhibit A** is a true and correct list of the more than 500 specific allergy blood tests that Defendant ACA has identified on its website as of May 14, 2010, as being performed using the IMMUNOCAP® blood test method, when Defendant ACA does not and cannot perform the IMMUNOCAP® blood test method.  Attached hereto as **Exhibit B** is a true and correct copy of a webpage from Defendant ACA's website falsely identifying the method that Defendant ACA uses to perform an "Allergen Panel – Pediatric Food + IgE" blood test as "IMMUNOCAP."

26.  Upon information and belief, Defendant ACA's website engineers are capable of removing all of the references to IMMUNOCAP® within two days of a request to do so by Defendants.  Using reasonable diligence, a person having ordinary skill in modifying websites could have removed all of the references to "IMMUNOCAP®" within two days of being requested to do so.

27.  In addition to representing on its website that Defendant ACA performs allergy blood tests using the IMMUNOCAP® method, employees and/or representatives of Defendant ACA have represented either directly or indirectly to physicians and/or the physicians' employees that Defendant ACA performs blood allergy tests using the

10

IMMUNOCAP® method. Upon information and belief, such representations were made at the direction and/or with the approval of Dr. Pitovski.

28. Defendant ACA has not performed blood tests for allergies using the IMMUNOCAP® method since February 2007. Defendant ACA does not currently perform blood tests for allergy using the IMMUNOCAP® method. Defendant ACA has not been authorized to use the IMMUNOCAP® mark to advertise or market its blood testing services for allergies since about January 2007, when it stopped purchasing IMMUNOCAP® reagents and supplies from Phadia US.

29. Defendant ACA's representation to physicians, either directly or through Defendant ACA's website, that Defendant ACA performs blood tests for allergies using the IMMUNOCAP® method has the potential to compromise patient care. The results of blood tests for allergies performed by Defendant ACA are not consistent or interchangeable with blood tests for allergies performed using the IMMUNOCAP® method. As a result, physicians may receive test results from Defendant which were generated using other competing blood tests for allergies, yet interpret those results under the belief that the results were obtained using the IMMUNOCAP® method, which may cause the physician to not diagnose or misdiagnose allergies, including serious and even fatal food allergies. Therefore, not only have Defendants' actions damaged Plaintiffs, but Defendants' actions may also have harmed patients whose physicians ordered blood tests for allergy from Defendant ACA believing that the tests were performed using the IMMUNOCAP® system, when they were not.

30. To generate revenue and profits, Defendant ACA has been knowingly and intentionally using the IMMUNOCAP® mark in order to deceive physicians into referring patients' blood tests for allergies to Defendant ACA, even though Defendant ACA does not perform any blood allergy tests using the IMMUNOCAP® method. Defendant ACA's use of the IMMUNOCAP® mark has resulted in the diversion of blood tests from potential physician customers of Plaintiffs' IMMUNOCAP® method and from Plaintiffs' clinical laboratory and hospital customers that actually perform the IMMUNOCAP® method.

31. Defendants' acts described herein have been and continue to be done with the knowledge that the acts would violate Plaintiffs' rights.

<u>FIRST CLAIM FOR RELIEF</u>

**(Trademark Infringement Under the Lanham Act)**

32. Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1-31 above as if fully set forth herein.

33. Plaintiff Phadia AB owns all right, title and interest in the registered trademark "IMMUNOCAP®." Defendants have had actual knowledge of Phadia AB's rights in the IMMUNOCAP® mark since at least as early as January 2007.

34. Defendant ACA has used and continues to use in commerce, a reproduction, counterfeit, copy or colorable imitation of the IMMUNOCAP® mark in the connection with the sale, offering for sale, distribution, or advertising of goods and/or services without the consent of Phadia AB.

35.  Defendant ACA's use and continued use of the IMMUNOCAP® mark are likely to cause confusion and mistake or to deceive the physicians and others who order blood tests for allergies in violation of 15 U.S.C. § 1114(1).  Upon information and belief, Defendant ACA's use of the IMMUNOCAP® mark has caused actual confusion in the minds of physicians.

36.  As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have been injured in their business, including injury to their reputation, resulting in lost revenues and profits, and diminished goodwill and reputation.  Plaintiffs are entitled to an accounting for Defendant ACA's profits and to recover damages.

37.  Plaintiffs lack an adequate remedy at law because certain damages, such as lost business opportunities and loss of goodwill, may not be susceptible to calculation to a reasonable certainty.  Therefore, Plaintiffs may not be fully compensated by an award of monetary damages.

38.  Defendants will continue to infringe Phadia AB's trademark rights unless enjoined by the Court.

39.  Defendants have committed acts of infringement with the knowledge that the acts would violate Plaintiffs' rights.  Defendants' acts have been knowing, willful and in conscious and intentional disregard of Plaintiffs' rights.

## SECOND CLAIM FOR RELIEF

### (False Designation of Origin Under the Lanham Act)

40.  Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1-31 above as if fully set forth herein.

41.  Plaintiffs' use and promotion of Phadia AB's IMMUNOCAP® mark have caused physicians and other relevant purchasers to identify Phadia AB as the source and origin of high-quality, accurate and reliable blood testing systems for identifying allergies.

42.  Defendant ACA has used the IMMUNOCAP® mark in connection with other blood tests for allergies and such use is likely to cause and has caused confusion, mistake and deception as to the affiliation, connection, or association of Defendant ACA with Plaintiffs, and as to the origin, sponsorship, or approval of the goods or services provided by Defendant ACA.

43.  Defendant ACA's unauthorized use of the IMMUNOCAP® mark constitutes false designation of origin, description or representation that is likely to cause confusion or mistake in violation of 15 U.S.C. § 1125(a).

44.  As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have been injured in their business, including injury to their reputation, resulting in lost revenues and profits, and diminished goodwill and reputation.  Plaintiffs are entitled to an accounting for Defendant ACA's profits and to recover damages.

45.  Plaintiffs lack an adequate remedy at law because certain damages, such as lost business opportunities and loss of goodwill, may not be susceptible to calculation to a reasonable certainty.  Therefore, Plaintiffs may not be fully compensated by an award of monetary damages.

46.  Defendants will continue to make false designations or representations and to cause certain allergy blood tests to be passed off as being sponsored by or associated with Plaintiffs unless enjoined by the Court.

47.  Defendants have committed acts of infringement with the knowledge that the acts would violate Plaintiffs' rights.  Defendants' acts have been willful and in conscious and intentional disregard of Plaintiffs' rights.

## THIRD CLAIM FOR RELIEF

### (False Advertising Under the Lanham Act)

48.  Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1-31 above as if fully set forth herein.

49.  Defendant ACA has made false and misleading descriptions of fact regarding certain blood testing to identify allergies in patients of physicians including in advertising materials.

50.  The false and misleading descriptions of fact made by Defendant ACA has actually deceived or had the capacity to deceive a substantial segment of Defendant ACA's intended recipients.

51.  The false and misleading descriptions of fact made by Defendant ACA were material and likely to influence the purchasing decisions of Defendant ACA's recipients to the detriment of Plaintiffs.

52.  As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have been and continue to be damaged in the form of lost revenues and profits.  Plaintiffs are entitled to an accounting for Defendant ACA's profits and to recover damages.

53.  Plaintiffs lack an adequate remedy at law because certain damages, such as lost business opportunities and loss of goodwill, may not be susceptible to calculation to a reasonable certainty.  Therefore, Plaintiffs may not be fully compensated by an award of monetary damages.

54.  Defendants will continue to make false and misleading descriptions of fact regarding certain allergy blood testing unless enjoined by the Court.

55.  Defendants have committed acts of false designation with the knowledge that the acts would violate Plaintiffs' rights.  Defendants' acts have been willful and in conscious and intentional disregard of Plaintiffs' rights.

## FOURTH CLAIM FOR RELIEF

### (Unfair Competition Under the Lanham Act)

56.  Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1-31 above as if fully set forth herein.

57.  Defendant ACA has used the IMMUNOCAP® mark without consent of Plaintiffs and such use is likely to and has caused confusion, mistake and deception as to

the affiliation, connection, or association of Defendant ACA with Plaintiffs, and as to the origin, sponsorship, or approval of the goods or services provided by Defendant.

58. Defendant ACA's use of the IMMUNOCAP® mark to promote, market or sell blood tests for allergies in competition with Plaintiffs constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

59. As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have been injured in their business, including injury to their reputation, resulting in lost revenues and profits, and diminished goodwill and reputation. Plaintiffs are entitled to an accounting for Defendant ACA's profits and to recover damages.

60. Plaintiffs lack an adequate remedy at law because certain damages, such as lost business opportunities and loss of goodwill, may not be susceptible to calculation to a reasonable certainty. Therefore, Plaintiffs may not be fully compensated by an award of monetary damages.

61. Defendants will continue to compete unfairly unless enjoined by the Court.

62. Defendants have committed acts of unfair competition with the knowledge that the acts would violate Plaintiffs' rights. Defendants' acts have been willful and in conscious and intentional disregard of Plaintiffs' rights

## FIFTH CLAIM FOR RELIEF

### (Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1.1 et seq.)

63. Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1-31 above as if fully set forth herein.

17

64. Defendant ACA has used the IMMUNOCAP® mark without consent of Plaintiffs and such use has caused confusion, mistake and deception as to the affiliation, connection, or association of Defendant ACA with Plaintiffs, and as to the origin, sponsorship, or approval of the goods or services provided by Defendant.

65. Defendants' conduct has had a capacity or tendency to deceive physicians who obtain allergy blood tests for their patients.

66. Defendants' conduct is in or affecting commerce in the State of North Carolina.

67. Defendants' wrongful conduct has been the proximate cause of injury to Plaintiffs in violation of N.C. Gen. Stat. § 75-1.1.

68. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been injured in their business, including injury to their reputation, resulting in lost revenues and profits, and diminished goodwill and reputation.

69. Plaintiffs lack an adequate remedy at law because certain damages, such as lost business opportunities and loss of goodwill, may not be susceptible to calculation to a reasonable certainty. Therefore, Plaintiffs may not be fully compensated by an award of monetary damages.

70. Defendants will continue to commit unfair and deceptive trade practices described herein unless enjoined by the Court.

71.  Defendants have committed acts of unfair and deceptive trade practices with the knowledge that the acts would violate Plaintiffs' rights.  Defendants' acts have been willful and in conscious and intentional disregard of Plaintiffs' rights.

## SIXTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

72.  Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1-31 above as if fully set forth herein.

73.  Plaintiffs' use and promotion of Phadia AB's IMMUNOCAP® mark have caused physicians and other relevant purchasers to identify Phadia as the source and origin of high-quality, accurate and reliable blood testing systems for identifying allergies.

74.  Defendant ACA has used the IMMUNOCAP® mark and such use is likely to cause and/or has caused confusion, mistake and deception as to the affiliation, connection, or association of Defendant ACA with Plaintiffs, and as to the origin, sponsorship, or approval of the goods or services provided by Defendant ACA.

75.  As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have been injured in their business, including injury to their reputation, resulting in lost revenues and profits, and diminished goodwill and reputation.  Plaintiffs are entitled to an accounting for Defendant ACA's profits and to recover damages.

76.  Plaintiffs lack an adequate remedy at law because certain damages, such as lost business opportunities and loss of goodwill, may not be susceptible to calculation to

a reasonable certainty.  Therefore, Plaintiffs may not be fully compensated by an award of monetary damages.

77.  Defendants will continue to compete unfairly and to cause certain blood tests for allergy to be passed off as being sponsored by or associated with Plaintiffs unless enjoined by the Court.

78.  Defendants have committed acts of unfair competition with the knowledge that the acts would violate Plaintiffs' rights.  Defendants' acts have been willful and in conscious and intentional disregard of Plaintiffs' rights.

## SEVENTH CLAIM FOR RELIEF

### (Injunctive Relief)

79.  Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1-31 above as if fully set forth herein.

80.  Plaintiffs' use and promotion of Phadia AB's IMMUNOCAP® mark have caused physicians and other relevant purchasers to identify Plaintiffs as the source and origin of high-quality, accurate and reliable blood testing systems for identifying allergies.

81.  Defendant ACA has used the IMMUNOCAP® mark without consent of Plaintiffs and such use has caused confusion, mistake and deception as to the affiliation, connection, or association of Defendant ACA with Plaintiffs, and as to the origin, sponsorship, or approval of the goods or services provided by Defendant ACA.

82.  Defendant ACA's unauthorized use of the IMMUNOCAP® mark constitutes unfair competition in violation of the common law of the State of North Carolina and other jurisdictions.

83.  As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have been injured in their business, including injury to their reputation, resulting in lost revenues and profits, and diminished goodwill and reputation.  Plaintiffs are entitled to an accounting for Defendant ACA's profits and to recover damages.

84.  Plaintiffs lack an adequate remedy at law because certain damages, such as lost business opportunities and loss of goodwill, may not be susceptible to calculation to a reasonable certainty.  Therefore, Plaintiffs may not be fully compensated by an award of monetary damages.

85.  Defendants will continue to make false designations or representations and to cause certain blood tests for allergies to be passed off as being sponsored by or associated with Plaintiffs unless enjoined by the Court.

86.  Defendants have committed acts of infringement with the knowledge that the acts would violate Plaintiffs' rights.  Defendants' acts have been willful and in conscious and intentional disregard of Plaintiffs' rights.

WHEREFORE, Plaintiffs pray:

A.  That a preliminary and permanent injunction issue restraining Defendants, their agents, servants, employees, successors and assigns and all others in concert and privity with Defendants, from using the IMMUNOCAP® mark in

connection with offering blood tests for allergies, from infringing U.S. Trademark Registration Nos. 2,555,198 and 3,645,935, from falsely designating and advertising its blood tests for allergies, from unfairly competing with Plaintiffs in connection with the advertising, offering for sale and the sale of blood tests for allergy, from engaging in unfair and deceptive trade practices in connection with the advertising, offering for sale and the sale of blood tests for allergy in the United States. Further, that Defendant ACA be ordered to provide written notice to each of Defendant ACA's customers that Defendant ACA is not authorized and does not perform blood tests for allergies using Plaintiffs' IMMUNOCAP® system and is not sponsored by or affiliated with Plaintiffs;

B. That judgment be entered in favor of Plaintiffs on their claims that Defendants have committed acts of trademark infringement, false designation, false advertising, unfair competition, and Unfair and Deceptive Trade Practices, and that Defendants committed the acts with the knowledge that the acts would violate Plaintiffs' rights;

C. That Defendants be ordered to account to Plaintiffs for Defendant ACA's profits and the actual damages suffered by Plaintiffs as a result of Defendants' acts or infringement, false designation, false advertising, and unfair competition pursuant to section 35 of the Lanham Act (15 U.S.C. § 1117);

D.  That Plaintiffs recover from Defendants, jointly and severally, on their claim of

Unfair and Deceptive Trade Practices, actual damages and  treble damages

pursuant to N.C. Gen. Stat. § 75-16 or, at Plaintiffs' election, punitive

damages, and on their claim of unfair competition under the common law of

the State of North Carolina, actual and punitive damages;

E.  That Defendants be ordered to pay,  jointly and severally, Plaintiffs' attorneys'

fees, together with costs of this action, pursuant to section 35 of the Lanham

Act (15 U.S.C. § 1117) and N.C. Gen. Stat. §  75-16.1; and

F.  For such other and further relief as may be just and equitable.

## <u>JURY DEMAND</u>

Plaintiffs request a trial by jury with regard to all issues for which a trial by jury is
allowed.

Respectfully submitted this 21st day of May, 2010.

<u>/s/John P. Higgins</u>
John P. Higgins
(N.C. State Bar No. 17442)
Justin A. Jernigan
(N.C. State Bar No. 38920)
SUMMA, ADDITON & ASHE, P.A.
Ballantyne Corporate Park
11610 North Community House Rd, Suite 200
Charlotte, North Carolina 28277-2199
Telephone: (704) 945-6704
Facsimile:  (704) 945-6735
jhiggins@summalaw.com


*Attorneys for Plaintiffs*
*Phadia AB and Phadia US Inc.*